**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **GERALD EUGENE MICHAEL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civil Action No. 17-0197 (ABJ)** |
| | : | |
| **UNITED STATES DEPTARTMENT** | : | |
| **OF JUSTICE,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

This case brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("Privacy Act" and "PA"), 5 U.S.C. § 552(a), is before the Court on defendant's motion for summary judgment ("Defs.' Mot.") [ECF No. 18]. The Court has considered the matters set forth in defendant's memorandum in support of the motion ("Def.'s Mem.") [ECF No. 18–1], statement of material facts ("Def.'s Stmt.") [ECF No. 18–2], and exhibits in support ("Def.'s Exs.") [collectively, ECF No. 18–3], as well as the plaintiff's opposition, ("Pl.'s Opp.") [ECF No. 21], and plaintiff's motion for discovery [21–1]. Since the agency has conducted an adequate search and any withholdings were proper under the statutory exemptions, defendant's motion will be granted. Plaintiff's motion for discovery will be denied.

## BACKGROUND

Plaintiff Gerald Eugene Michael, proceeding *pro se*, is a federal prisoner designated to Butner Low Federal Correctional Institution, located in Butner, North Carolina. Complaint ("Compl.") at 1 ¶ 1. He is serving a 240-month sentence stemming from a 2011 felony conviction. *See U.S. v. Michael*, *et al.*, No. 1:10-cr-00379 (CCE-1) (M.D. N.C.), at ECF Nos. 77, 103. Plaintiff was found guilty by a jury on charges relating to drug distribution, possession of a firearm by a

convicted felon, and conspiracy and solicitation to kill and attempt to kill another person, with the intent to prevent his attendance and testimony in an official proceeding. *Id.*; Compl. at 1 ¶ 7; Def.'s Stmt. at 13 ¶ 43.

In this case, plaintiff is suing the United States Department of Justice ("DOJ"), seeking materials he requested pursuant to FOIA/PA from the Executive Office for United States Attorneys ("EOUSA"). The search for records also involved the United States Attorney's Office for the Middle District of North Carolina ("USAO/NCM"), the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and the Federal Bureau of Investigation ("FBI"). Compl. at caption; Def.'s Mem. at 1–2.

Plaintiff submitted his FOIA/PA request ("Request") to EOUSA on April 9, 2014. Def.'s Stmt. at ¶ 1; Def.'s Ex. 1, Jolly Declaration ("Jolly Decl.") at ¶ 4. The Request sought "[a]ll documents, tape recordings, correspondence, and communications in the criminal matter pertaining to Gerald Eugene Michael, Case No. 1:10CR379--1 for the Middle District of North Carolina." *Id.* at ¶ 2; Jolly Decl. at ¶ 4; Jolly Exhibit ("Jolly Ex.") A; Pl.'s Opp. at 2 ¶ 2. By letter dated May 20, 2014, EOUSA acknowledged the Request (No. 2014-02290) and indicated that it would begin its processing. Jolly Decl. at ¶ 6; Jolly Ex. C. EOUSA referred the Request to USAO/NCM, the office that prosecuted plaintiff, to conduct a search for responsive records. *Id.*; Def.'s Stmt. at ¶ 3.

On July 8, 2014, plaintiff filed an administrative appeal with the Office of Information Policy ("OIP"), asserting that EOUSA had failed to timely respond to his Request. Def.'s Stmt. at ¶ 4; Jolly Decl. at ¶ 8; Jolly Ex. E. EOUSA responded to plaintiff on July 18, 2014, though, notifying him that a search was conducted by USAO/NCM that revealed potentially responsive records, but that DOJ regulations required him to pay a fee. Def.'s Stmt. at ¶ 5; Jolly Decl. at ¶ 7.

Plaintiff paid the fee, and it was received by EOUSA on August 1, 2014, Def.'s Stmt. at ¶ 5; Jolly Decl. at ¶ 10; Jolly Ex. G, but the fee was later waived.  Def.'s Stmt. at ¶ 6 n.1.

On April 2, 2015, EOUSA notified plaintiff that the USAO/NCM search for Request No. 2014-02290 had revealed that all of the potentially responsive, releasable records originated with ATF.  Def.'s Stmt. at ¶ 6; Jolly Decl. at ¶ 14; Jolly Exs. K, L.  Pursuant to 28 C.F.R. § 16.4 and § 16.42, USAO/NCM located and retrieved 804 pages of responsive documents in plaintiff's case file and returned the records to EOUSA's FOIA/PA unit for further processing.  Def.'s Stmt. at ¶ 7; Jolly Decl. at ¶¶ 13–22, 24.  Of those, EOUSA withheld approximately 100 pages of records that had been filed under seal in the District Court for the Middle District of North Carolina.  Def.'s Stmt. at ¶ 7; Jolly Decl. at ¶ 14. Referral

On April 2, 2015, EOUSA also referred the pages to ATF.  Def.'s Ex. 3, Chisholm Declaration ("Chisholm Decl.") at ¶ 3.[1]  Meanwhile, plaintiff filed another administrative appeal with the OIP on April 13, 2015.  Def.'s Stmt. at ¶ 8; Jolly Decl. at ¶ 16; Jolly Ex. N.

By letter dated May 6, 2016, ATF acknowledged receipt of the EOUSA referral, and assigned it No. 2015-0817.  Def.'s Stmt. at ¶ 25; Chisholm Decl. at ¶ 4; Chisholm Ex. B.  ATF deemed the responsive records to be exempt from the access provisions of the PA.  Def.'s Stmt. at ¶¶ 28–30, 56–57; Chisholm Decl. at ¶ 8; Hardy Decl. at ¶ 8–10.  Therefore, ATF processed the Request under FOIA to "achieve maximum disclosure."  Def.'s Stmt. at 56–57; Hardy Decl. at 9–10.  On August 21, 2017, ATF issued a final determination letter.  Def.'s Stmt. at ¶ 26; Chisholm Decl. at ¶ 5; Chisholm Ex. C.  As part of that final determination, ATF released 252 pages in part

---

[1] Plaintiff asserts that he sent a separate FOIA/PA request to ATF, however, ATF has no record of receiving a FOIA/PA request directly from plaintiff, and he provides no other evidence of that allegation.  Compl. at 3 ¶¶ 14–18; Chisholm Decl. at ¶ 3; Chisholm Ex. A.  It appears that plaintiff may be confusing the inter-agency referral to ATF as a separate request.  *See* Def.'s Stmt. at ¶ 24 n.2.

and 36 pages in full. Def.'s Stmt. at ¶ 27; Chisholm Decl. at ¶ 5; Chisholm Ex. C. ATF withheld 159 pages in full. *Id.* The majority of these withholdings fell under 5 U.S.C. § 522(b)(6) ("Exemption 6") & 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"). *Id.* Of the remaining pages, 327 were withheld as duplicates of records already provided, and 30 were referred to the FBI pursuant to 28 C.F.R. § 16.4. *Id.*

The materials ATF submitted to the FBI on August 23, 2017 included plaintiff's "FBI identification record," containing his arrest and conviction history. Def.'s Stmt. at ¶ 50; Def.'s Ex. 4, Hardy Declaration ("Hardy Decl.") at ¶ 6; Hardy Ex. 5. The FBI reviewed this material and redacted some information pursuant to FOIA Exemptions 6 and 7(C). Def.'s Stmt. at ¶ 51; Hardy Decl. at ¶ 6.

On September 11, 2015 and September 14, 2015, OIP issued decisions on plaintiff's appeals. Def.'s Stmt. at ¶¶ 9–10; Jolly Decl. at ¶¶ 18–19; Jolly Exs. P, Q. It affirmed EOUSA's referral to ATF, but it also remanded the Request to EOUSA and ordered that EOUSA confirm whether records it withheld remained under seal. *Id.* OIP also instructed EOUSA to release a five-page indictment that was located subsequent to the appeal. *Id.* Further, OIP also directed EOUSA to conduct an additional search for responsive records at the USAO/NCM. *Id.*

Meanwhile, on November 17, 2016, FBI released some documents to plaintiff, of which 20 pages were released in part, and 10 pages were released in full. Def.'s Stmt. at ¶¶ 65–66; Hardy Decl. at ¶¶ 17–18; Hardy Ex. 5. Information was withheld pursuant to FOIA Exemptions 6 and 7, *see* Def.'s Stmt. at ¶¶ 58–63; Hardy Decl. at ¶¶ 17–18; Hardy Ex. 5, and the document was also found to be exempt from the access provisions of the PA, *see* Def.'s Stmt. at ¶ 52–56; Hardy Decl. at ¶¶ 17–18; Hardy Ex. 5.

By letter dated October 7, 2015, EOUSA informed plaintiff that it was processing the request remanded by OIP, now administratively re-numbered 2015-03771. Def.'s Stmt. at ¶ 11; Jolly Decl. at ¶ 20; Jolly Ex. R. On June 24, 2016, EOUSA released the five-page indictment and notified plaintiff that the remaining withheld records remained under seal in the District Court for the Middle District of North Carolina. Def.'s Stmt. at ¶ 12; Jolly Decl. at ¶ 21; Jolly Ex. S.

On January 31, 2017, plaintiff filed the complaint in this matter. *See generally*, Compl. Plaintiff alleges that he has attempted to obtain "evidence" and "discovery" relating to his criminal investigation and trial for many years. Pl.'s Opp. at 1–2. After sensing that he had come to the end of his efforts to deal directly with the Middle District of North Carolina and the attorneys involved in his trial, he began invoking FOIA and the Privacy Act. *Id.* He now alleges that defendant's response to his Request has been insufficient. *Id.* at 2, 4–5. Plaintiff believes that a number of materials have been unfairly withheld, and he is particularly focused on his efforts to obtain what he refers to as the "Walser and Bone tapes," and any documentation relating to them. *Id.* at 2–5.

According to both parties, individuals named Tony Walser and Robert Bone cooperated with the government in the course of the criminal investigation. *Id.*; see also Def.'s Stmt. at ¶¶ 45–47.; Def.'s Mem. at 16–18; Chisholm Decl. at ¶ 41–44. Plaintiff's conversations with both of them were recorded and used as evidence at trial. *Id.* Plaintiff contends that the government engaged in misconduct during the trial because only excerpts of the recordings were played, and the jury did not have the opportunity to hear them in full. Pl.'s Opp. at 2–5. Plaintiff submits that the recordings were therefore analyzed out of context, and that the jury was deprived of meaningful exculpatory information that would have assisted in proving his innocence. *Id.*

In addition to any "information or evidence" provided during the course of his investigation and prosecution, plaintiff specifically seeks production of the Walser and Bone recordings. *Id.* at 6. Plaintiff assumes that, because these recordings existed at one point in time, or potentially exist in transcribed form, defendant must be withholding the original audio-recordings from him now. *Id.* at 3–4. Defendant states that its searches have uncovered no tapes, but they did unearth transcripts of certain recordings. Defendant's Reply ("Def.'s Reply") at 3 ¶ 1, 6 ¶ 2, 6 ¶ 2. Based on the privacy interests protected by Exemptions 6 and 7(C), defendant will neither confirm nor deny that the transcripts it discovered and produced are those relating to Walser and Bone. *Id.* However, defendant has attested that it has produced all available transcripts of recordings in response to plaintiff's Request, and that they have been released to plaintiff with some redactions. *See* Def.'s Ex. D, Vaughn Index ("Vaughn Index") at 8, Doc No. 16, pg. 223; Def.'s Reply at 2 ¶ 3, 3 ¶ 1, 4 ¶ 1, 6 ¶ 2; Defs.' Reply Ex. 6. In addition to the tape-recordings themselves, plaintiff contests defendant's reliance on FOIA exemptions, and he seeks the release of unredacted transcripts. Pl.'s Opp. at 4–5.

## STANDARD OF REVIEW

In a FOIA case, a district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F. 2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F. 3d 521, 527 (D.C. Cir. 2011); *Defenders of Wildlife v. 77 U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it can affect the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy,* 813 F. 2d 1236, 1241 (D.C. Cir. 1987). In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" for summary judgment to be inappropriate. *Weisberg v. DOJ*, 627 F. 2d 365, 371 n.54 (D.C. Cir. 1980) (internal quotation marks omitted). In assessing a defendant's motion, though, a court must "view the facts and draw reasonable inferences in the light most favorable to plaintiff." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

In FOIA cases, "[s]ummary judgment may be granted on the basis of agency affidavit [,]" when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F. 3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F. 3d 283, 287 (D.C. Cir. 2006)); *see also Peavey v. Holder*, 657 F. Supp. 2d 180, 188 (D.D.C. 2009) (quoting *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 33 (D.D.C. 2002)). Agency declarations are afforded a "presumption of good faith" and can be rebutted only with evidence that the agency did not act in

good faith. *Defenders of Wildlife*, 314 F. Supp. 2d at 8. However, a plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims . . . ." *SafeCard Servs., Inc. v. SEC*, 926 F. 2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F. 2d 770, 771 (D.C. Cir. 1981)).

In a Privacy Act case, a court may similarly rely on agency affidavits or declarations to grant a motion for summary judgment. *See Chambers v. U.S. Dep't of the Interior*, 568 F. 3d 998, 1003 (D.C. Cir. 2009). At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, a court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched. *Jimenez v. Executive Office for U.S. Attorneys*, 764 F. Supp. 2d 174, 179–80 (D.D.C. 2001) (citing *Chambers,* 568 F. 3d at 1003). Even if the nonmoving party fails to respond to the motion for summary judgment, or portions thereof, a court cannot grant the motion for the reason that it was conceded. *Winston & Strawn, LLP v. McLean*, 843 F. 3d 503, 505 (D.C. Cir. 2016). The burden is always on the movant to demonstrate why summary judgment is warranted. *Id.* A district court "must determine for itself that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, and then 'should state on the record the reasons for granting or denying the motion.' " *Id.* at 508–09 (quoting Fed. R. Civ. P. 56(a)).

## ANALYSIS

### I.     The defendant's searches were adequate.

Plaintiff does not explicitly challenge the sufficiency of defendant's searches, but the Court will address the issue because, on a motion for summary judgment, a defendant bears the initial burden of showing that its searches were adequate. *Weisberg*, 745 F.2d at 1485.

The adequacy of an agency's search is measured by a standard of reasonableness under the attendant circumstances. *Truitt v. U.S. Dep't of State*, 897 F. 2d 540, 542 (D.C. Cir. 1990). To satisfy its burden, the agency must show that it "has conducted a search reasonably calculated to uncover all relevant documents." *Elliott v. U.S. Dep't of Agric.*, 596 F. 3d 842, 851 (D.C. Cir. 2010) (quoting *Weisberg*, 705 F.2d at 1344). It may base its showing on affidavits or declarations submitted in good faith, *see Truitt*, 897 F.2d at 542, provided that these affidavits or declarations explain in reasonable detail the scope and method of the search, *see Morley v. CIA*, 508 F. 3d 1108, 1116 (D.C. Cir. 2007) (citations omitted). "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance . . . ." *North v. U.S. Dep't of Justice*, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)). Agencies must show that their searches for responsive records "us[ed] methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F. 2d 57, 68 (D.C. Cir. 1990); *see also Campbell v. Dep't of Justice*, 164 F. 3d 20, 27 (D.C. Cir. 1998). Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search. *Valencia–Lucena v. U.S. Coast Guard*, 180 F. 3d 321, 326 (D.C. Cir. 1999) (citation omitted). Here, the review of the record does not give rise to those concerns.

Defendant has submitted the declaration of Timothy Owens. Def.'s Ex. 2, Owens Declaration ("Owens Decl."). Owens is a legal assistant who serves as the FOIA liaison at USAO/NCM. Owens Decl. at ¶ 2. At the time of the search relevant to Request No. 2014-02290, Owens was serving under the prior FOIA liaison. *Id.* He submits the declaration on the basis of his personal knowledge, training, and in his official capacity. *Id.* Owens not only reviewed the search conducted and records gathered by his predecessor and the FOIA team, but he also conducted the search again himself, reaching the same results. *Id.* at ¶ 5. Defendant also provides

a declaration from Vinay Jolly, an attorney-advisor for the EOUSA. Jolly Decl. at ¶ 1. He is assigned to the FOIA/PA division and submits his detailed declaration in his official capacity and with personal knowledge. *Id.* at ¶¶ 1–3

Owens avers that USAO/NCM conducted a systematic and comprehensive search of civil and criminal records to determine the location of any files responsive to plaintiff's Request. *Id.* at ¶ 3. The first search was conducted in July 2014. *Id.* at ¶ 7. Case materials were located in a closed file in the USAO/NCM's Greensboro office. *Id.* at ¶ 5. USAO/NCM preserved the file in its original condition. *Id.* The office then searched for any and all responsive documents, correspondence, and communications in the physical case file. *Id.* at ¶¶ 4–5. The file included agency investigative reports, court documents, and sealed material. *Id.*

USAO/NCM also searched its electronic records through the Legal Information Office Network System ("LIONS") and the District Court's Case Management/Electronic Case Files ("CM/ECF") system. *Id.* at ¶ 6. USAO/NCM used plaintiff's first and last name as search terms, and successfully located the electronic records relating to his criminal case. *Id.* In his declaration, Owens explains the nature of LIONS and CM/ECF and further explains why these particular systems of records were searched. *Id.* He also attests that with these efforts, all systems of records likely to render a response to plaintiff's Request were searched. *Id.* at ¶ 9; *see also* Jolly Decl. at ¶ 23.

After the search was conducted, USAO/NCM forwarded all potentially responsive documents to EOUSA's FOIA/PA unit for review and response to plaintiff. Owens Decl. at ¶ 7; *see also* Jolly Decl. at ¶ 23. USAO/NCM did not transmit the court-sealed records, though, as it deemed them to be prohibited from disclosure. Jolly Decl. at ¶ 23.

Pursuant to the OIP remand (Request No. 2015-03771), USAO/NCM identified the records that remain under seal in the United States District Court for the Middle District of North Carolina: a psychiatric report, a position paper and other authority regarding sentencing factors, and the Court's "statement of reasons" for the sentence imposed. Owens Decl. at ¶¶ 7–8; Jolly Decl. at ¶ 23. All other records on the Court docket are on the public record. *See id.*; *see also USA v. Michael, et al* No. 1:10-cr-00379 (CCE-1) (M.D. N.C.), at ECF Nos. 5, 41, 51, 92, 95, 98, 115, 136, 137.

Defendant's declarations are sufficient to establish that USAO/NCM conducted an appropriate and reasonable search. Owens explains the locations and systems used to conduct the search, why the relevant information would be found in those systems, and the scope of the search. *Id.* at ¶¶ 4–6. He further describes the relevant electronic databases and how files are generally retrieved. *Id.* at 6. In addition, through the Owens and Jolly declarations, defendant details the methods utilized and the results of the search conducted on plaintiff's behalf. *Id.* at ¶¶ 4–6. It appears that USAO/NCM's original search, and remand search, were thorough. *Id.* at ¶¶ 4–8. In addition to being reasonably detailed, the declarations appear to have been made in good faith. Therefore, the Court finds that defendant's searches was reasonable under the circumstances. *See White v. DOJ*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012).

Since the defendant "made a *prima facie* showing of adequacy, the burden [then] shifts to plaintiff to provide . . . evidence sufficient to raise 'substantial doubt' concerning the adequacy of the agency's search." *Iturralde v. Comptroller of Currency*, 315 F. 3d 311, 314 (D.C. Cir. 2003). Plaintiff not identified any grounds to conclude that the searches were inadequate. He insists that defendant has withheld the audiotapes he is seeking, but there has pointed to no evidence that would support this claim. Pl.'s Opp. at 2–5. "[I]t is well settled that conclusory allegations unsupported by factual data will not create a triable issue of fact." *Broaddrick v. Exec. Office of*

*President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (internal quotation marks and citation omitted). And plaintiff's bare allegation that defendant has withheld information is insufficient to overcome the presumption of good faith accorded to agency declarations. *See id.*

Defendant has averred that it found no audiotapes during its searches. Def.'s Reply at 3 ¶ 1, 6 ¶ 2, 6 ¶ 2; s*ee also Weisberg*, 745 F.2d at 1363 (FOIA requires disclosure only of records "for which agencies have chosen to retain possession or control") (internal alterations omitted) (citing *Kissinger v. Reporters Committee*, 445 U.S. 136, 151–52 (1980)). The adequacy of a search is not determined by its results, *but by the method of the search itself. Weisberg*, 745 F.2d at 1485 (emphasis added). Since the Court has concluded that defendant responded sufficiently to plaintiff's Request, it must now turn its attention to defendant's claimed Exemptions.

## II.     The Exemptions were properly invoked.

### A.     Privacy Act Exemption: 5 U.S.C. § 552a(j)(2) ("Exemption (j)(2)")

Both ATF and the FBI rely on Privacy Act Exemption (j)(2) for certain withholdings. Def.'s Mem. at 6–8. The Privacy Act provides that "[e]ach agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him." 5 U.S.C. § 552a(d)(1). But in Exemption (j)(2), the statute specifically excludes records that are: (1) stored in a system of records that has been designated by an agency to be exempt from the Privacy Act's disclosure requirements, and (2) stored in a system that is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws," and that consists of "information compiled for the purpose of a criminal investigation." 5 U.S.C. § 552a(j)(2)(A).

Peter Chisolm, acting chief of the disclosure division of ATF, submits a declaration which explains that records sought by plaintiff were located in the Criminal Investigation Report System of Records, a database that contains records related to ATF's criminal investigation. Chisholm Decl. at ¶¶ 1, 6. Chisholm indicates that this system is exempt from the access provisions of the Privacy Act, *id.* at ¶ 6 (citing 68 Fed. Reg. 3553).

It is plain that ATF is an agency "which performs as its principal function any activity pertaining to the enforcement of criminal laws," and that the records at issue here constitute "information compiled for the purpose of a criminal investigation." *See* 5 U.S.C. § 55a(j)(2)(A); Chisholm Decl. at ¶ 8 (enumerating various federal criminal statutes that ATF enforces); *see, e.g., Barouch v. Dep't of Justice*, 87 F. Supp. 3d 10, 31–2 (D.D.C. 2015). Defendant has thus established that Privacy Act Exemption (j)(2) applies to the records that were located in the ATF's Criminal Investigation Report System of Records. *Id.*

Similarly, David Hardy, section chief of the Record/Information Dissemination Section of the FBI, submits a declaration which discusses a single document excluded pursuant to Exemption (j)(2): plaintiff's "FBI investigation record." Hardy Decl. at ¶¶ 1, 7–9. DOJ has promulgated a regulation, 28 C.F.R. § 16.96(a)(1), which exempts FBI law enforcement records maintained in the Central Records System from the Privacy Act. *Id.* at ¶ 9. Because this "investigation record" was generated in the furtherance of the FBI's law enforcement duties and is maintained in the Central Records System, it is properly exempt from access under (j)(2) of the Privacy Act. *See* 28 C.F.R. § 16.96(a)(1); Hardy Decl. at ¶¶ 1, 7–9; *Marshall v. FBI*, 802 F. Supp. 2d 125, 133–34 (D.D.C. 2011).

## B. FOIA Exemption: 5 U.S.C. § 552(b)(3) ("Exemption (b)(3)")

Pursuant to Exemption (b)(3), an agency may withhold information "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), so long as the statute:

> (A)(i) requires [withholding] from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and

> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

*Id.* To prevail on summary judgment, the agency "need only show that the statute claimed is one of exemption as contemplated by Exemption [(b)(3)] and that the withheld material falls within the statute." *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (citation omitted).

Here, ATF has invoked Exemption 3 to withhold a "Firearms Trace Summary" pursuant to the Consolidated Appropriations Act of 2012, Pub. L. No. 112-55, 125 Stat. 552. Def.'s Stmt. at ¶¶ 31–32. The Act of 2012 restricts the ATF from disclosing this information, by requiring:

> That, during the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section, except to: (1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose …; and no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data; and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding ....

Consolidated and Further Continuing Appropriations Act of 2012, Pub.L. No. 112–55, 125 Stat. 552, 609–10.

Various iterations of this language have appeared in many, if not all, of the consolidated appropriations acts of Congress since (at least) 2003. [2]  *See, e.g.*, Consolidated Appropriations Act, 2010, Pub.L. No. 111–117, 123 Stat. 3034, 3128–29; Consolidated Appropriations Act, 2008, Pub.L. No. 110–161, 121 Stat. 1844, 1903–904; Consolidated Appropriations Act, 2005, Pub.L. No. 108–447, 118 Stat. 2809, 2859–60; Consolidated Appropriations Act, 2004, Pub.L. No. 108–199, 118 Stat. 3, 53; Consolidated Appropriations Act, 2003, Pub.L. 108-7, 117 Stat. 11, 473; *see also* Chisholm Decl. at ¶¶ 10–23 (providing a detailed discussion of legislative history and Congress's intent in enacting the Consolidated Appropriations Act of 2012).  Because the provisions which predate the 2009 FOIA Amendments remain active and enforceable, defendant submits that they are included within the scope of FOIA Exemption (b)(3).  Chisholm Decl. at ¶¶ 10–23; *see also McRae v. Dep't of Justice*, 869 F. Supp. 2d 151, 163 (D.D.C. 2012)

Courts in this district have predominantly held that the ATF may withhold trace information derived from the Firearms Trace System Database under Exemption (b)(3). *See Abdeljabbar v. Bureau of Alcohol, Tobacco and Firearms*, 74 F. Supp. 3d 158, 172–77 (D.D.C. 2014); *Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 145 (D.D.C. 2013); *McRae*, 869 F. Supp. 2d at 163; *Singh v. FBI*, 574 F. Supp. 2d 32, 45–46 (D.D.C. 2008); *Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 111–12 (D.D.C. 2008); and *Watkins v. ATF* , No. 04–800, 2005 WL

---

[2] The Tiahrt Amendment to the 2003 Appropriations Act first placed restrictions on ATF's disclosure of trace information. *See* H.R. Rep. No. 575, 107th Cong., 2d Sess. 20 (2002); *see also* Chisholm Decl. at ¶ 12.  Congress directed that no funds appropriated in that act "or any other Act with respect to any fiscal year" were available "to take any action" under the Freedom of Information Act with respect to information in the Firearms Trace System database. *Id.* at ¶ 23 (citing GAO Legal Decision B-309704).

2334277, at *1 (D.D.C. Sept. 1, 2005); *but see Fowlkes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 67 F. Supp. 3d 290, 300–01 (D.D.C. 2014) (holding that ATF was not exempted from complying with request for firearms trace report under (b)(3)). Defendant also points out that the General Accountability Office has twice stated that the trace restrictions from 2003 to 2008 contain sufficient "language of futurity" such that they represent permanent law. Chisholm Decl. at ¶ 23 (citing ATF–Words of Futurity in Fiscal Year 2006 Appropriations Act, GAO Legal Decision B-309704 (Aug. 28, 2007); ATF–Prohibition in the 2008 Consolidated Appropriations Act, GAO Legal Decision B316510 (July 15, 2008)).

For all of these reasons, the Court is persuaded by the reasoning in *Abdeljabbar* that "the disclosure prohibitions set forth by Congress in the 2005 and 2008 appropriations bills are still effective prospectively and beyond those fiscal years as a permanent prohibition, until such time as Congress expresses the intent to repeal or modify them…. Congress's uninterrupted use of this language in appropriations bills after 2009 supports the conclusion that Congress did not intend for the judiciary to depart from this long–standing position." 74 F. Supp. 3d at 175–76.

Therefore, the Court finds that the Firearms Trace Summary withheld by ATF is contained in and derived from the contents of the Firearms Trace System Database referenced in Public Law 112-55. Plaintiff supplies no reason why this Court should find that the Appropriations Act of 2012, or the prospectively applied language of similar statutory provisions, is now inapplicable. Accordingly, the Court concludes that the ATF properly withheld the Firearms Trace Summary pursuant to Exemption (b)(3).

### C. FOIA Exemptions: 5 U.S.C. § 522(b)(6) ("Exemption 6") & 5 U.S.C. § 552(b)(7)(C) ("Exemption 7" & "Exemption 7(C)")

Defendant invokes FOIA Exemptions 6 and 7(C) to justify the bulk of the withholdings on the part of the ATF and the FBI. *See* Def.'s Mem. at 12–16; *see generally*, Vaughn Index.

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes . . ." 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). In assessing the threshold question of whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F. 3d 172, 176–77 (D.C. Cir. 2002) (citations and internal quotations omitted).

ATF and the FBI are both, by definition, criminal, investigatory, and regulatory enforcement agencies within the DOJ. *See* 28 U.S.C. § 599A; see 28 U.S.C. § 531, *et seq.* Both Chisholm and Hardy have averred that all of the responsive records withheld pursuant to Exemption 7 were compiled for law enforcement purposes. Chisholm Decl. at ¶ 25; Hardy Decl. at ¶¶ 11 –12. Indeed, plaintiff's own pleadings make it clear that he is seeking records gathered in a criminal investigation. Pl.'s Opp. at 1–5; Compl. at 2 ¶¶ 7–8; *see, e.g., Roberts v. FBI*, 845 F. Supp. 2d 96, 103 (D.D.C. 2012) ("It is apparent from the nature of plaintiff's FOIA request that the information he seeks was compiled for law enforcement purposes, more specifically, the criminal prosecution of [the] plaintiff. Thus, the [agency] meets its initial burden of establishing that the records at issue are law enforcement records for purposes of Exemption 7"); *see also Blackwell v. FBI*, 646 F. 3d 37, 40 (D.C. Cir. 2011) ("[I]t is especially convincing [that the requested information was compiled for law enforcement purposes] in this case because [plaintiff] explicitly sought records related to his own criminal prosecution."). Defendant has therefore met this threshold burden, and the Court concludes that the relevant responsive ATF and FBI records were compiled for law enforcement purposes.

Exemption 7(c) and Exemption 6 serve similar ends. *See Seized Prop. Recovery Corp. v. United States Customs & Border Prot.*, 502 F. Supp. 2d 50, 56 (D.D.C. 2007); *see also* Def.'s Mem. at 12–16; *see generally*, Vaughn Index. Exemption 6 protects information contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that "applies to a particular individual" qualifies for consideration under this exemption. *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982); *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 42–43 (D.D.C. 2004); *New York Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc).

Information need not be particularly intimate to merit protection under Exemption 6; it shields from disclosure "personal information, such as names and addresses," that, if released, "would create a palpable threat to privacy." *Prison Legal News*, 787 F. 3d 1142, 1147 (D.C. Cir. 2015) (quoting *Judicial Watch*, 449 F.3d at 152). The exemption "has been construed broadly to cover essentially all information sought from Government records that 'appl[y] to a particular individual.' " *Pinson v. U.S. Dep't of Justice*, 202 F. Supp. 3d 86, 99 (D.D.C. 2016) (quoting *Wash. Post Co.*, 456 U.S. at 602). A requester must establish an overriding public interest in disclosure by showing that the information is necessary to "shed any light on the [unlawful] conduct of any Government agency or official." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772–73 (1989); *accord SafeCard Services, Inc.*, 926 F. 2d at 1206.

Similarly, Exemption 7(C) protects from disclosure records compiled for law enforcement purposes to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Again, a court must balance the privacy interests in nondisclosure against the public interest in "shed[ding] light on an agency's performance of its statutory duties." *Reporters Comm.*, 489 U.S. at 762, 773. The proper

application of "privacy exemptions [6 and 7(C)] turns on a balance of 'the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny.' " *CEI Wash. Bureau, Inc.*, 469 F. 3d 126, 128 (D.C. Cir. 2006) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 526 (1991)). Thus, when a requester seeks such information, an agency must conduct a balancing test to determine if releasing the information would constitute a "clearly unwarranted invasion of personal privacy[,]" by weighing the privacy interest in non-disclosure against any qualifying public interest in disclosure. *Wash. Post Co.*, 456 U.S. at 596 n. 1. It is this balancing test and "not the nature of the files in which the information was contained [that] limit[s] the scope of the exemption." *National Ass'n of Home Builders v. Norton*, 309 F. 3d 26, 33 (D.C. Cir. 2002).

Exemption 7(C) authorizes the withholding of records if their disclosure would constitute an unwarranted invasion of personal privacy, while Exemption 6 requires a "clearly" unwarranted invasion to justify nondisclosure. Thus, if an agency has met its burden to justify withholding information under Exemption 6, it has also met the "lighter burden" under Exemption 7(C). *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F. 3d 1, 6 (D.C. Cir. 2011) (internal quotations omitted).

Defendant has shown that the ATF and the FBI withheld information properly within the ambit of both Exemptions. ATF applied Exemption (b)(6), in conjunction with Exemption (b)(7)(C), to withhold identifying information related to (1) federal law enforcement agents and employees; (2) non-law enforcement third-parties; and (3) state and local law enforcement personnel. Def.'s Stmt. at ¶ 36; Chisholm Decl. at ¶ 32. The FBI applied Exemptions (b)(6) and (b)(7)(C) to withhold the names and badge numbers of local and state law enforcement employees. Def.'s Stmt. at ¶ 62; Hardy Decl. at ¶ 12. In each instance, the agencies weighed the adverse

effects of the release of the information on the individuals involved against the benefit to the public that disclosure could be expected to provide, and concluded that the interest in privacy was greater. Def.'s Stmt. at ¶¶ 38–44, 60–63; Chisholm Decl. at ¶¶ 29, 31, 34, 37–9; Hardy Decl. at ¶¶ 14 n.2, 15.

This determination was in accordance with Circuit precedent. Law enforcement personnel conducting investigations have a well-recognized and substantial privacy interest in withholding information about their identities. *See, e.g., Lesar v. DOJ*, 636 F.2d 472, 487 (D.C. Cir. 1980). Redaction of the names of federal law enforcement officers and support personnel under similar circumstances has been routinely upheld. *See id.* Thus, the Court agrees that disclosure of personal information of law enforcement personnel may hinder the ability to conduct ongoing investigations, may lead to unwarranted harassment, and may otherwise cause embarrassment and constitute the invasion of privacy that is contemplated by the Exemptions. These concerns significantly outweigh what little the information could add to the public understanding of agency operations. *See, e.g., Banks v. U.S. Dep't of Justice*, 813 F. Supp. 2d 132, 144 (D.D.C. 2011); *Schoenman v. FBI*, 763 F. Supp. 2d 173, 198 (D.D.C. 2011).

This Circuit has also consistently held that Exemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses and informants, *see Schrecker*, 349 F. 3d 657 at 661, and it has determined that such third-party information is "categorically exempt" from disclosure under Exemption 7(C), in the absence of an overriding public interest in its disclosure. *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F. 3d 885, 894, 896 (D.C. Cir. 1995) (acknowledging the "obvious privacy interest" cognizable under Exemption 7(C) and extending this interest "to third parties who may be mentioned in investigatory files").

The disclosure of the names of individuals mentioned in law enforcement files would serve a significant public interest only where "there is compelling evidence that the agency denying the FOIA/PA request is engaged in illegal activity," and that the information sought "is necessary in order to confirm or refute that evidence." *Davis v. Dep't of Justice*, 968 F. 2d 1276, 1282 (D.C. Cir. 1992). Plaintiff demonstrates no such public interest here with respect to either the law enforcement personnel or the third-parties mentioned in responsive records. *See SafeCard Servs., Inc.*, 926 F.2d at 1206.

But in his opposition, plaintiff advances other objections to the redactions made by the agencies here. He argues that "it is a logical absurdity to claim that disclosure should be prohibited because of a concern for 'unwarranted invasion of personal privacy' when the subject parties, Bone and Walser, have been publically [sic] revealed." Pl.'s Opp. at 5 ¶ 2. Plaintiff makes a good point. But courts had held that third-parties do not waive their privacy interests in government records for FOIA purposes, even if they have previously testified in open court. *Petrucelli v. DOJ*, 51 F. Supp. 3d 142, 168 (D.D.C. 2014). "And these third parties maintain an interest in their personal privacy even if plaintiff already knows, or is able to guess, their identities." *Id.*; *see also Elliott v. FBI*, No. 06-1244, 2007 WL 1302595, at *6 (D.D.C. May 2, 2007); *Meserve v. DOJ*, No. 04-1844, 2006 WL 2366427, at *7 (D.D.C. Aug. 14, 2006); *Lardner v. DOJ*, No. 03-0180, 2005 WL 758267, at *19 (D.D.C. Mar. 31, 2005). Therefore, plaintiff's argument does not carry the day.

Also, to overcome these exemptions, a plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that "the information is likely to advance that interest." *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004); *see Blackwell*, 646 F. 3d at 41. Plaintiff states: "This is a matter of [p]laintiff's freedom. Surely the issue of wrongful convictions

outweighs a non-existent privacy interest." Pl.'s Opp. at 5 ¶ 2. While the Court certainly recognizes that plaintiff's *personal* interest in the material is strong, this Circuit has explained that the *public* interest in disclosure embodied in the FOIA statute "does not include helping an individual obtain information for his personal use" to overturn a conviction. *Oguaju v. United States*, 288 F. 3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 541 U.S. 970, 124 (2004), *reinstated*, 378 F. 3d 1115 (D.C. Cir. 2004) (citation omitted); *Johnson v. Exec. Office for U.S. Attorneys*, 310 F. 3d 771, 777 (D.C. Cir. 2002) (holding that FOIA/PA does not offer a remedy for alleged violations of constitutional rights even if plaintiff intends to use the requested records to support a challenge to his criminal conviction). And, in any event, plaintiff has been provided with the substance of the conversations he requested; what is absent is only the personal identifying information.

Therefore, defendant has justified the withholding of this information through Exemptions 6 and 7(C). *See Lesar*, 636 F. 2d at 487. The submitted declarations are specific as to what information is being withheld and why the privacy interests clearly outweigh any public interest, they are neither conclusory nor vague, and there is no evidence in the record of bad faith on the part of the agencies. *See id.*

### D. FOIA Exemption: 5 U.S.C. § 522(b)(7)(F) ("Exemption 7(F)")

Exemption 7(F) protects law enforcement information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Exemption 7(F) has been invoked to protect the identities of informants, sources, and law enforcement personnel. *Hammouda v. Dep't of Justice Office of Info. Policy*, 920 F. Supp. 2d 16, 26 (D.D.C. 2013); *Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104, 111 (D.D.C. 2010); *Blanton v. Dep't of Justice*, 182 F. Supp. 2d 81, 87 (D.D.C. 2002). The exemption is also designed to specifically

protect law enforcement officers and special agents. *See Blanton*, 182 F. Supp. 2d 81, 87 (D.D.C. 2002); *see also Jimenez v. F.B.I.*, 938 F. Supp. 21, 30–31 (D.D.C. 1996). Information withheld pursuant to Exemption 7(F) is also subject to withholding pursuant to Exemptions 6 and 7(C), although no balancing test is required for protection under Exemption 7(F). *See Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002).

Here, ATF invoked Exemption 7(F) to protect the names of both agents and third-parties whose safety could potentially be at risk if their names were released. Def.'s Stmt. at ¶¶ 45–47.; Def.'s Mem. at 16–18; Chisholm Decl. at ¶ 41–44. These individuals are arresting agents and under-cover informants who were involved in plaintiff's investigation and prosecution, and they fall squarely within the category of individuals who warrant protection under Exemption 7(F). *Id.*; *See Hammouda,* 920 F. Supp. 2d at 26 (citation omitted). While the Court finds that Exemptions 6 and 7(C) are applicable to the same information, alternatively, reliance on Exemption 7(F) is also appropriate.

## E.  Documents Withheld Under Seal

Finally, defendant withheld certain documents that are under seal pursuant to an order of the U.S. District Court for the Middle District of North Carolina. Def.'s Stmt. at ¶¶ 7, 10, 12, 23. Plaintiff has not explicitly contested these withholdings, but he is generally aggrieved that he has not received a full release of records. Pl.'s Opp. at 5–6.

This Circuit has held that documents protected under seal by court order are protected from FOIA disclosure. "Unlike a 'constitutionally compelled disclosure to a single party' during discovery in criminal litigation, *Cottone v. Reno*, 193 F.3d 550, 556 (D.C. Cir. 1999), a disclosure of information under the FOIA is a release not only to the requester but to the public at large."

The supporting declarations from EOUSA and USAO/NCM demonstrate that defendant

properly withheld sealed documents from disclosure. Owens Decl. at ¶¶ 4–8; Jolly Decl. at ¶¶ 14 n.2, 19–21, 23; Jolly Exs. Q, S. Defendant made efforts to determine which records were under seal, both initially, and then again in response to directives from OIP. *See id.* The public record corroborates defendant's declarations regarding the nature and status of the sealed documents at issue. *See USA v. Michael, et al* No. 1:10-cr-00379 (CCE-1) (M.D. N.C.), at ECF Nos. 5, 41, 51, 92, 95, 98, 115, 136, 137. Therefore, the Court finds that the withholding of the sealed court documents was appropriate.

## F. <u>Segregability</u>

Under FOIA, "even if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." *Roth v. U.S. Dept. of Justice*, 642 F. 3d 1161, 1167 (D.C. Cir. 2001) (internal quotation marks and citation omitted). "[I]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F. 2d 242, 260 (D.C. Cir. 1977)). Thus, an agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released*." Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks and citation omitted). However, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" from the requester. *Sussman v. U.S. Marshals Serv.*, 494 F. 3d 1106, 1117 (D.C. Cir. 2007).

Here, the agency declarants aver that they have reviewed the responsive documents, and that all non-exempt and segregable information has been produced. Def.'s Stmt. at 18–19; Def.'s

Stmt. at ¶¶ 44, 48–9, 57, 64–7, 68; Chisholm Decl. at ¶¶ 40, 45; Hardy Decl. at ¶¶ 10, 17–18. Defendant submits an ATF declaration asserting that the documents have been reviewed, that "no additional information could be released[,]" and that "[a]ll releasable information has been provided." Chisolm Decl. at ¶ 45. The FBI provides a similar declaration, stating that "[p]laintiff has been provided all responsive non-exempt records or portions of records referred to the FBI for processing," Hardy Decl. at ¶ 17, and describing the segregability assessment process in great detail, *id.* at ¶¶ 17–18. These representations are sufficient. *See id.*

A declaration attesting to the performance of a review of the documents, and a Vaughn index describing each withholding, satisfies the FOIA's segregability requirement. *See, e.g., Johnson*, 310 F. 3d at 776; *Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008). Defendant supplies a Vaughn index describing the withheld documents. *See generally*, Vaughn Index. Plaintiff has not provided any basis to question the good-faith presumption afforded to these representations. *See Johnson*, 310 F. 3d at 776. Thus, the Court concludes that defendant has satisfied its segregability obligations under FOIA.

## PLAINTIFF'S MOTON FOR DISCOVERY

With his opposition, plaintiff filed what he refers to as a motion for discovery ("Mot. for Disc.") [ECF No. 21–1]. Plaintiff requests that all tape recordings, transcripts, interviews, reports, and notes from the criminal matter be released, particularly those related to Bone, Walser, and two other named individuals. Pl.'s Mot. for Disc. at 1 ¶ A. Plaintiff seeks this discovery as potential evidence in support of a collateral attack on his conviction, pursuant to 28 U.S.C. § 2255. Plaintiff believes that the alleged withholding of such material during his underlying trial constituted a due process violation under *Brady v. Maryland*, 373 U.S. 83 (1963), and he further alleges ineffective assistance of counsel. Mot. for Disc. at 2–4.

In essence, what the plaintiff calls a motion for discovery is just a request for the production of the same records covered by the FOIA request. This may be the appropriate subject of discovery in the criminal case, but it does not relate the issues to be resolved in this civil action under the Freedom of Information Act. And, in any event, "[d]iscovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F. 3d 312, 318 (D.C. Cir. 2006) (quoting *Schrecker*, 217 F. Supp. at 35). This Court has found that the declarations submitted by defendant are sufficient to meet the summary judgment standard, and defendant has averred that all releasable transcripts, or portions of transcripts, have been provided with appropriate redaction. Def.'s Reply at 3 ¶ 1, 6 ¶ 2, 6 ¶ 2. So, plaintiff's motion will be denied as moot.

In his submissions, plaintiff has characterized this action as a contest between "David and Goliath." Pl.'s Opp. at 1 ¶ 1. The Court observes that plaintiff, proceeding *pro se*, has handled this case in an effective manner, and that his persistence has been rewarded with the production of a significant quantity of records, even if others have been lawfully withheld.

## CONCLUSION

For the foregoing reasons, the Court concludes that defendant conducted reasonable and adequate searches of records for materials responsive to plaintiff's FOIA and Privacy Act Request, and that there was a basis in law for its withholdings. Defendant has also satisfied the segregability requirement under FOIA. Accordingly, the Court will grant defendant's motion for summary judgment, and plaintiff's request for discovery is denied. A separate Order will issue.

_____/s/_____
AMY BERMAN JACKSON
Date: September 27, 2018          United States District Judge

26